**LEWIS JOHS AVALLONE AVILES, LLP**
James F. Murphy
One CA Plaza, Suite 225
Islandia, New York 11749
T: (631) 755-0101
F: (631) 755-0117
E-mail: jfmurphy@lewisjohs.com

*Attorneys for Plaintiffs*
*ABH Nature's Products, Inc. and*
*ABH Pharma, Inc.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ABH NATURE'S PRODUCTS, INC. and ABH PHARMA, INC., <br><br> Plaintiffs, <br><br> -against- <br><br> SUPPLEMENT MANUFACTURING PARTNER, INC. d/b/a SMP NUTRA, FUTURE PACK FULFILLMENT, INC., JOSPEH IMPERIO, alias FRANK CANTONE, STEVEN MILANO, WILLIAM CARTWRIGHT and JOHN DOES NOS. 1-10, <br><br> Defendants. | Civil Case No.: <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs ABH Nature's Products, Inc. ("ABH Nature's") and ABH Pharma, Inc. ("ABH Pharma" and together with ABH Nature's, "ABH' or "Plaintiffs") by and through their attorneys, Lewis Johs Avallone Aviles, LLP, bring this action for damages against Defendants Supplement Manufacturing Partner, Inc. d/b/a SMP Nutra ("SMP Nutra"), Future Pack Fulfillment, Inc. ("Future Pack"), Joseph Imperio, alias Frank Cantone ("Imperio"), Steven Milano ("Milano") and William Cartwright ("Cartwright" and together with SMP Nutra, Future Pack, Imperio and Milano, "Defendants"), demanding a trial by Jury.  Plaintiffs allege the following on information

and belief, except those allegations concerning Plaintiffs, which are alleged on the basis of personal knowledge.

## PRELIMINARY STATEMENT

1.      This is an action for unfair competition, false designation of origin, and false advertising under the law of the United States (Trademark Act of 1946, 15 U.S.C. § 1051 *et. seq.*); for common law trademark infringement and unfair competition under New York State Law; and for multiple torts under New York State Law as set forth below. Plaintiff ABH Nature's manufactures nutraceuticals and health supplements for sale to customers throughout the United States and abroad. Plaintiff ABH Pharma, markets, sells and distributes the products to such customers. The names and brands "ABH Nature's", "ABH Pharma" and their derivations (the "Marks") are Trademarks of Plaintiffs have been developed by Plaintiffs and advertised throughout the United States. The Marks have become distinctive and well known to the public to be associated with Plaintiffs and their business concerns.

2.      Defendants have used without permission or authority the Marks which are fully owned by the Plaintiffs and the use of such Marks as well as derivations of such Marks are violations of Federal and New York State Law.

3.      In addition, Defendants Imperio and Milano are parties to certain Confidentiality and Non-Compete Agreements (the "Restrictive Covenants") with Plaintiff that they have flagrantly violated in breach of the Agreements.

4.      Defendants have also engaged in a scorched earth campaign to damage Plaintiffs by converting millions of dollars of Plaintiffs products by failing to release such products to Plaintiffs, who have the absolute right to same, by defaming Plaintiffs, by converting and

disclosing Confidential Information through unauthorized access to Plaintiffs' computer systems and tortiously interfering with the current and prospective business relations of Plaintiffs.

5.      By letter dated August 16, 2019, Plaintiffs demanded that Defendants cease and desist from using the Marks in anyway shape or form in contravention of the rights of Plaintiff to such Marks and their derivations.

6.      By way of this action, Plaintiffs seeks replevin of the goods wrongfully converted by Defendants and preliminary and permanent injunctive relief directing Defendants to: (i) immediately cease and desist from using the Marks, and (ii) immediately cease and desist from competing against Plaintiffs, soliciting Plaintiffs' customers and employees and disclosing Confidential Information of Plaintiffs in violation of the Restrictive Covenants. This action also seeks damages for violation of Federal and State unfair competition statutes, and breaches of fiduciary duty.  Plaintiffs also seek redress from Defendants for their tortious activity as set forth below.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over Plaintiff's Federal law claims, pursuant to 28 U.S.C. §§ 1331, 1338, 15 U.S.C. § 1121 and 18 U.S.C. §1030.  The Court has supplemental jurisdiction over Plaintiffs' claims arising under the laws of the State of New York, pursuant 28 U.S.C. §§ 1338(b) and 1367.

8.      Venue is proper in this Judicial District, pursuant to 28 U.S.C. § 1391(b) because (i) this is an action brought pursuant to the Federal Trademark Act of 1946; and (ii) a substantial part of the events giving rise to the claims-including Defendants' unlawful use of Plaintiff's Marks and/or marks confusingly similar to Plaintiffs' Marks occurred and is occurring in this judicial district.

9.      Upon information and belief, this Court has personal jurisdiction over each of the Defendants because, among other reasons, each resides or is headquartered in this district, and/or is engaged in substantial and ongoing business in New York and/or has caused tortious injury in New York.

## THE PARTIES

10.      Plaintiff ABH Nature's is a New York corporation organized and existing under the laws of the State of New York with its principal place of business in Edgewood New York..

11.      Plaintiff ABH Pharma is a New York corporation organized and existing under the laws of the State of New York with its principal place of business in Edgewood, New York.

12.      Defendant SMP Nutra is a New York corporation organized and existing under the laws of the State of New York with an address at Deer Park, New York.

13.      Defendant Future Pack, is a New York corporation organized and existing under the laws of the State of New York with an address at Edgewood, New York.

14.      Defendant Imperio is a resident of the State of New York and owns and operates Defendants SMP Nutra and Future Pack.

15.      Defendant Milano is a resident of the State of New York.

16.      Defendant Cartwright is a resident of the State of New York.

17.      Defendants John Does Nos. 1-10 are each individuals or entities who have actively and knowingly participated and/or profited from, or otherwise are directly, contributorily, or vicariously liable for the illegal acts identified herein by Defendants.

**FACTUAL BACKGROUND**

18.     Long before Defendants' wrongful activities described below, Plaintiffs used their names and related trademarks and/or service marks, including the Marks, to identify nutraceuticals and health supplements that they manufacture, distribute, market and sell to customers.

19.     The Plaintiffs' Marks include the marks "ABH Nature's Products" and "ABH Pharma" and their derivations.

20.     Plaintiffs have invested significant sums of money in developing, improving, and promoting goods under the Marks and have promoted and sold such goods and related services to customers in the United States.

21.     The Marks have been and continue to be publicized through advertising in this judicial district, including through the internet domain names "ABH Natures.com" and ABH Pharma.com" and their derivations. Plaintiffs have invested substantial amounts of money in connection with such advertising.

22.     As a result of Plaintiffs' efforts to promote the goods offered under the Marks and on account of their outstanding reputation and goodwill, the Marks have become well known to members of the public as distinctive indicators of the source of Plaintiffs' products and services.

23.     The Marks are distinctive and well known in the United States, including in this district.

**Imperio, Milano and Cartwright Join ABH**

24.     ABH Nature's was formed by Jahirul Islam in 1994 to manufacture nutraceuticals and health supplements and has operated continuously under that tradename since its formation.

25.     In or about March 2016 Imperio, who uses the alias "Frank Cantone", agreed to work with Jahirul Islam ("Mr. Islam"), the owner of ABH Nature's, to form ABH Pharma to act as the sales and marketing arm of ABH Nature's.

26.     Imperio and Mr. Islam were each owners of fifty percent of the issued and outstanding capital stock of ABH Pharma.

27.     Unbeknownst to Mr. Islam, Imperio had been fired from his previous employer Maker's Nutrition for allegedly stealing confidential business information of his employer.

28.     In or about May 2017 Imperio and Mr. Islam formed Defendant Future Pack to provide fulfillment services to fulfill orders for products manufactured by ABH Nature's and marketed and sold by ABH Pharma.

29.     ABH Pharma, was the owner of all the issued and outstanding capital stock of Future Pack.

30.     Imperio, in addition to being a stockholder in ABH Pharma, was employed by ABH Pharma as a consultant.

31.     Imperio's responsibilities included promoting, marketing and selling ABH Nature's products to customers through ABH Pharma.

32.     On September 11, 2018 Imperio executed a Restrictive Covenant agreement pursuant to which he agreed not to disclose, take or remove from the possession of ABH any Confidential Information.

33.     Imperio further agreed not to compete with Plaintiffs' business for two years following, the termination of his employment, not to solicit any employee of ABH for hire, and not to solicit or induce any customer, supplier or other person having a contractual or business relationship with ABH to terminate or alter said relationship or otherwise interfere with such

6

relationship or future relationship. The contents of the Imperio Restrictive Covenant are incorporated herein by reference.

34.     On or about September 3, 2018 Milano was hired by ABH as a Senior Account Executive..

35.     Milano was responsible for, among other things, promoting and securing the sale of ABH products.

36.     On September 7, 2018 Milano executed a Restrictive Covenant pursuant to which he agreed not to disclose, take or remove from the possession of ABH any Confidential Information.

37.     Milano further agreed not to compete with Plaintiffs' business for two years following, the termination of his employment, not to solicit any employee of ABH for hire, and not to solicit or induce any customer, supplier or other person having a contractual or business relationship with ABH to terminate or alter said relationship or otherwise interfere with such relationship or future relationship. The contents of the Milano Restrictive Covenant are incorporated herein by reference.

38.     In or about 2016 Defendant Cartwright was hired by ABH as its Chief Marketing Officer.

39.     Cartwright was responsible for, among other things, marketing ABH's products through the ABHNatures.com and ABHPharma.com websites.

**<u>Defendants' Wrongful and Tortious actions</u>**

40.     Within one year of Imperio joining ABH Pharma, the company received increasing complaints that its customer orders were not being fulfilled and its vendors were not being paid by Imperio due to mismanagement by Imperio.

41.    In addition, ABH discovered that Imperio opened credit cards without Plaintiffs' knowledge and began to charge massive amounts on the cards for personal expenses completely unrelated to the business of ABH Pharma.

42.    In the year 2018 alone, ABH Pharma discovered that Imperio charged over $252,000.00 in expenses, virtually all of which were personal in nature and completely unrelated to the business of ABH Pharma.

43.    Imperio and/or Milano, in breach of their fiduciary duty and duty of loyalty to ABH, and in flagrant violation of their Restrictive Covenant agreements, while employed by ABH, opened and/or became associated with a competing company, SMP Nutra, to engage in the Business of ABH Pharma.

44.    In addition, Imperio by 2017 began to act more and more irrationally.

45.    Imperio often became violent, verbally abusive, damaged walls and furniture and threatened employees of ABH, including Sahina Islam, Mr. Islam's daughter, with physical harm.

46.    Imperio physically assaulted ABH employee John Riccobono by slapping him in the face in front of multiple witnesses.

47.    Imperio also followed ABH employees in his car after the workday from the ABH offices, including Sahina Islam and Mr. Islam.

48.    On the morning of September 4, 2019, Imperio confronted Mr. Islam in the parking lot of ABH and physically threatened him.

49.    On or about July 23, 2019 Imperio was asked to no longer come to the offices of ABH and instead, work from the Future Pack office located at 250 Executive Drive in Edgewood, New York.

50.     By such date, Imperio and Mr. Islam had agreed that Imperio would transfer all of his 50% ownership interest in ABH Pharma to Mr. Islam and ABH Pharma would transfer Future Pack to Imperio.

51.     On or about the same date, Imperio approached ABH employee Kyle McCurry and offered him money if Mr. McCurry would secretly go through ABH's personal files to obtain Imperio's and Milano's original Restrictive Covenants and provide the originals to him.

52.     Mr. McCurry refused to take any money from Imperio but at his request provided the Imperio and Milano original Restrictive Covenants to him.

53.     Unbeknownst to Imperio and Milano, Plaintiffs maintained copies of the Restrictive Covenant agreements.

54.     On or about the same date, Imperio, Milano and Cartwright entered ABH's business location at 131 Heartland Blvd., Edgewood, New York, after hours and without permission and began to copy confidential information belonging to ABH.

55.     Among the confidential information copied and removed from ABH without permission by Imperio, Milano and Cartwright, was a non-binding draft of a Consent Decree between the United States of America and ABH which contained a proposed injunction to restrain ABH from manufacturing and distributing products unless it took remedial actions specified by the United States. The contents of the draft Consent Decree are incorporated herein by reference.

56.     Despite the fact that the Consent Decree is a draft, is of no legal force or effect and is subject to ongoing discussions between the United States and Foley & Lardner LLP, as attorneys for ABH, Defendants began distributing the confidential draft Consent Decree and

related correspondence to ABH customers, advising that it was in effect and that ABH could no longer do business.

57.     Defendants have contacted ABH customers directly to falsely state that ABH is going out of business, cannot continue to operate due to the draft Consent Decree and can no longer provide products and services to such customers.

58.     For example, on August 30, 2019 Defendant Imperio wrote to ABH customer Wellness Creations as follows:

> Based on the attached DOJ letter I see it best for yourself and partners to find a new manufacturer. Again this is strictly for your best interest in the hopes you do not forward this back to ABH. As you can see from the attached Department of Justice letter every order placed through ABH is running the risk of recall at any moment.

59.     On or about August 15, 2019 Imperio spoke with Edd Cardenten from ABH customer Vitalitus. LLC and falsely stated that "ABH is prohibited from operating by the Food and Drug Administration."

60.     On or about the same date, Imperio on behalf of SMP Nutra and Future Pack made the same or substantially similar statements to ABH customers, Ultra Vulgur Media, LLC, Awakened Alchemy, BMO Yapi Org., Arigen Nutrition, LLC, Vitacore, Mighty Ant Nutrition, Rediston LTD, Liv Body, LLC., Viva Deo, LLC., Healthy Life Creations, Healthy Healing Enterprises, LLC., HA Company D.O.O. and Iron Brothers.

61.     Due to Defendants' illegal and wrongful actions ABH has been unable to ship product located at Future Pack to its customers including those identified in the preceding paragraph.

62.     Imperio in or about August 2019 advised customer, including Wellness Creations that the products that ABH was manufacturing and marketing were adulterated and mislabeled.

63.     The statements were false and were designed to impugn the basic integrity of ABH's business and denigrate the quality of ABH's products and services.

**Imperio, Milano and Cartwright Convert ABH's Confidential Information and Imperio and Milano Violate their Restrictive Covenants**

64.     Between June and July 2019, Defendants Imperio, Milano and/or Cartwright accessed ABH's database, HotSpot, which contained highly confidential information belonging to ABH and without authorization or permission illegally downloaded such information to an external computer.

65.     Imperio, Milano and/or Cartwright exported ABH's 26,000 customer names and contacts and created an Excel file which they converted for their own benefit and to the detriment of ABH.

66.     Imperio, Milano and/or Cartwright also downloaded salary information for every ABH employee and forwarded such confidential information to ABH employees to sabotage ABH, cause internal friction among employees and benefit Defendants at the expense of ABH.

67.     Defendants are improperly utilizing ABH's confidential customer list and information, including its trade secrets, to steal customers that have been developed by ABH at great expense over many years.

68.     In addition, on June 27, 2019 while associated with and/or employed by ABH, Imperio, Milano and/or Cartwright formed Defendant SMP Nutra as a New York Domestic Business Corporation in order to directly compete against ABH in violation of the Restrictive Covenants.

69.     Imperio is an owner of SMP Nutra.

70.     On the date that SMP Nutra was formed, Imperio, Milano and Cartwright were or became officers and/or employees of ABH.

71.     SMP Nutra engages in the same business as the ABH companies and coordinates the manufacture, marketing and fulfillment of nutraceuticals and health supplements.

72.      SMP specializes in the manufacture of a number of nutraceuticals and health supplements, including collagen manufacturing, protein manufacturing, vitamin manufacturing, herbal manufacturing, probiotic manufacturing, and others.

73.     It also markets nutraceutical and health supplements.

74.     Imperio and Milano currently, own, operate and/or are employed by SMP Nutra.

75.      Cartwright currently owns, operates and/or is employed by SMP Nutra.

76.     Imperio and Milano are engaging in the same business as ABH in clear violation of the Restrictive Covenants that they executed in favor of ABH.

77.     In addition, on or about July 23, 2019 Defendant SMP Nutra solicited and extended an offer of employment to ABH employee Kyle McCurry to act as the COO at SMP Nutra.

78.     This was in direct violation of the Imperio and Milano Restrictive Covenants which mandate that they shall not solicit any employee of ABH for hire.

79.     In addition, Imperio on behalf of  SMP Nutra, hired ABH employees David Silvio and Luis Sanchez in direct violation of the Restrictive Covenant Agreement.

**Defendants' Refusal to Release ABH's Goods and Inventory from storage**

80.     Currently there are goods owned by ABH stored at the Future Pack business location at 250 Executive Drive, Edgewood, New York.

81.     The value of the ABH goods stored at Future Pack is in excess of one million dollars.

82.    SMP Nutra, Future Pack and/or Defendants have refused to allow ABH to remove its goods from the Future Pack location.

83.    Future Pack and/or Defendants have refused to fulfill orders to ABH customers.

84.    Future Pack and/or Defendants have refused to release and ship products to multiple ABH customers including Ultra Vulgur Media, LLC, Awakened Alchemy, BMO Yapi Org., Arigen Nutrition, LLC, Vitacore, Mighty Ant Nutrition, Rediston LTD, Liv Body, LLC., Viva Deo, LLC., Healthy Life Creations, Healthy Healing Enterprises, LLC., HA Company D.O.O. and Iron Brothers.

85.    In addition, Defendant Imperio on behalf of Future Pack acknowledged in August 2019 that Future Pack is storing 429 pallets of ABH's products at the Future Pack location.

86.    Defendants have falsely asserted that they cannot fulfill orders to customers or allow ABH to remove its products because of the draft, non-binding Consent Decree.

87.    On July 23, 2019 Imperio instructed an ABH warehouse employee to divert an $80,000 order from an ABH vendor, RV Pharma, to the Future Pack business location instead of the ABH warehouse.

88.    Imperio's and/or Defendants' actions set forth herein constitute conversion under New York law.

89.    On or about July 23, 2019 Imperio had all the locks at the Future Pack location at 250 Executive Drive in Edgewood, New York changed to prevent ABH from removing over one million dollars in inventory and goods that are stored there for fulfillment to customers.

90.    Future Pack and Defendants are holding ABH hostage by refusing to release its stored inventory despite the fact that ABH has a clear and superior right to the inventory.

91.     Defendants' failure to release the ABH goods from storage has and will continue to irreparably damage ABH's customer relations and goodwill and unless the Defendants, including SMP Nutra and Future Pack, are ordered to immediately release the ABH inventory, ABH will experience a permanent loss of existing and prospective business relations and money damages will be insufficient to compensate ABH for the damage to its goodwill and business reputation.

92.     ABH customers, including Vitacore, Mighty Ant Nutrition, Rediston, Liv Body, Viva Deo, Healthy Life Creations, Healthy Healing Enterprises and HA Company have ordered, and in certain cases paid for, ABH products that cannot be shipped due to the fact that Defendants are holding the products hostage at the Future Pack facility.

93.     The illegal retention of Plaintiffs' goods and inventory by Defendants has and will cause irreparable damage in that ABH's very existence is threatened if it cannot supply its stored goods to its customers.

94.     In addition, Defendants' Imperio, Milano and Cartwright owed fiduciary duties and/or duty of loyalty to Plaintiffs by virtue of their fiduciary relationship as owners, officers and/or employees of ABH and breached their fiduciary duties by looting the company, usurping corporate business opportunities  and damaging ABH in its business as set forth herein.

**Defendants' Wrongful  Unfair Competition and False Designation of Origin**

95.     Defendants have also blatantly infringed on Plaintiffs' valuable Marks and have engaged in outright theft of same.

96.     On or about March 4, 2019 Defendants without Plaintiffs' knowledge or consent, and while associated with ABH, amended the ownership registration information with respect to the ABH websites "ABHNature.com" and "ABHPharma", which were owned by ABH, to

wrongfully reflect that Defendants Cartwright and SMP Nutra were the registered owners of the sites.

97.     Defendants then linked the converted ABH domain names and digital assets to the SMP Nutra website.

98.     As a result, any current or prospective customer of ABH that entered the ABH domain names would be immediately transferred to the SMP Nutra website controlled by Defendants.

99.     This was intentionally done to infringe on Plaintiffs valuable Marks, to usurp corporate opportunities belonging to Defendants, to steal customers and damage Plaintiffs existing and prospective business relations by creating the false impression that SMP Nutra was the owner of the Marks.

100.     Plaintiffs have learned that one or more of the Defendants subsequently amended the public ownership information relating to the domain names and Marks by changing the ownership registration information from SMP Nutra to "Registration Private."

101.     This was done to hide the fact that Defendants had surreptitiously changed the ownership registration of the domains and Marks from ABH to SMP Nutra, thereby infringing on Plaintiffs' valuable Marks.

102.     Defendants have damaged Plaintiffs by, *inter alia*, violating the Lanham Act, New York Law and engaging in tortious activities directed to Plaintiffs.

103.     Said wrongful acts include, but are not limited to, the following:

    a.  Marketing and/or selling nutraceutical and health supplement products by using the Marks.

    b.  Altering the ABH Marks without permission.

    c.   Otherwise marketing and selling products to the public that purport to be ABH products that are not in fact ABH products.

104.    On or about August 16, 2019 counsel for Plaintiffs forwarded a letter to Defendants Imperio and Future Pack and demanded, among other things, that Defendants cease and desist from any further use of the ABH Marks and that they release ABH's products from the Future Pack location. The contents of such letter are incorporated by reference..

105.    Despite the demand to cease and desist all use of the Marks, Defendants have failed to discontinue the use of the Marks, failed to take other steps required to discontinue the wrongful use of the Marks and have not released the ABH goods from storage.

106.    Defendants acted with malice to harm Plaintiffs, interfere with their business relationship with existing and potential future customers, destroy Plaintiffs' goodwill and business reputation in order to promote and enrich Defendants at the expense of Plaintiffs.

## <u>COUNT I</u>
### <u>False Designation of Origin, False Advertising, and</u>
### <u>Unfair Competition in Violation of 15 U.S.C. § 1125(a)</u>

107.    Plaintiffs repeat and reallege each and every allegation contained herein, with the same force and effect as though fully set forth at length herein.

108.    Defendants have engaged in acts constituting unfair competition, false designation of origin and false advertising in violation of § 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a).

109.    By using the ABH Marks and/or using marks confusingly similar to the ABH Marks, notwithstanding Plaintiffs' prior rights in such Marks, Defendants have made and are making false and/or misleading representations that their products originate with, are approved

or endorsed by or are otherwise affiliated or connected with Plaintiffs in such a manner as to create a likelihood of confusion among prospective purchasers.

110.    Defendants' use of the ABH Marks, and/or use of marks confusingly similar to the ABH Marks, constitute a false designation of origin within the meaning of 15 U.S.C. § 1125(a).

111.    Defendants' express or implied representations that the sale of their products originate with or are approved or endorsed by Plaintiffs constitutes use of false designations or representations of fact within the meaning of 15 U.S.C. § 1125(a).

112.    Plaintiffs have been damaged by Defendants' conduct and Defendants' use of names and Marks identical and confusingly similar to those of Plaintiffs constitutes unfair competition, entitling Plaintiffs to the remedies afforded under 15 U.S.C. § 1125(a).

113.    Defendants' act of false designation of origin and false advertising have caused or are likely to cause Plaintiffs irreparable injury.

114.    Unless enjoined by this Court, Defendants will continue these acts of infringement to Plaintiffs' and the public's immediate and irreparable damage.

115.    Plaintiffs are entitled to injunctive relief and damages in an amount to be proven at trial, together with attorneys' fees.

## COUNT II
## Common Law Trademark Infringement

116.    Plaintiffs repeat and reallege each and every allegation contained herein, with the same force and effect as though fully set forth at length herein.

117.    Defendants have engaged in acts constituting common law trademark infringement under New York Law.

118.    Defendants have advertised, marketed and sold product under the ABH Marks without seeking Plaintiffs' consent, thereby infringing the ABH Marks.

119.    Defendants' use of Marks that are identical and/or confusingly similar to the ABH Marks to sell products similar to those that the Plaintiffs sell under those Marks is likely to cause confusion, mistake, or deception as to the source or origin of Defendants' products.

120.    The use of the ABH Marks or marks confusingly similar to the ABH Marks was calculated to deceive or confuse the public and enable Defendants to profit unjustly from Plaintiffs' goodwill.

121.    Defendants' conduct has caused and/or is likely to cause Plaintiffs irreparable injury, loss of reputation and pecuniary damage.

122.    Unless enjoined by this Court, Defendants will continue these acts of infringement, thereby deceiving the public and causing Plaintiffs irreparable damage.

123.    Plaintiffs are entitled to injunctive relief and damages in an amount to be proven at trial, together with attorneys' fees.

<u>**COUNT III**</u>
<u>**Common Law Unfair Competition**</u>

124.    Plaintiffs repeat and reallege each and every allegation contained herein, with the same force and effect as though fully set forth at length herein.

125.    Defendants have engaged in acts constituting common law unfair competition.

126.    Defendants' use of Marks identical or confusingly similar to the ABH Marks to sell products similar to those that ABH manufactures and sells under those Marks falsely suggests that Defendants and their business and products are associated with, or are sponsored, licensed or authorized by, Plaintiffs.

127.    Defendants' use of Marks that are identical and/or confusingly similar to the ABH Marks was calculated to deceive or confuse the public or enable Defendants to profit unjustly from Plaintiffs' goodwill.

128.    Defendants' unfair competition has caused or is likely to cause Plaintiffs irreparable injury, loss of reputation and pecuniary damage.

129.    Unless enjoined by the Court, Defendants will continue these acts of unfair competition, thereby causing Plaintiffs and the public further irreparable damage.

130.    Plaintiffs are entitled to injunctive relief and damages in an amount to be proven at trial, together with attorneys' fees.

## COUNT IV
## Declaratory Judgment

131.    Plaintiffs repeat and reallege each and every allegation contained herein, with the same force and effect as though fully set forth at length herein.

132.    An actual ripe, and justiciable controversy has arisen between the parties regarding the ownership and use of the ABH Marks.

133.    Plaintiffs have given notice to Defendants that it is the rightful owner of such Marks.

134.    For the reasons stated above, Plaintiffs are entitled to a declaratory judgment that it is the rightful owner of the subject ABH Marks.

## COUNT V
## Breach of Fiduciary Duty and Implied Covenant of Good Faith and Fair Dealing

135.    Plaintiffs repeat and reallege each and every allegation contained herein, with the same force and effect as though fully set forth at length herein.

136.    At all relevant times, the Defendants owed fiduciary duties to Plaintiffs.

137.    The Defendants were, at all relevant times, Shareholders, Directors, Officers and/or employees of Plaintiff.

138.    The Defendants breached their fiduciary duties and the implied covenant of good faith and fair dealing to Plaintiffs.

139.    As a proximate and natural consequence of Defendants' breach of fiduciary duty and the implied covenant of good faith and fair dealing, Plaintiffs have sustained damages in an amount to be proven at trial, together with attorneys' fees.

## COUNT VI
## Unjust Enrichment

140.    Plaintiffs repeat and reallege each and every allegation contained herein, with the same force and effect as though fully set forth at length herein.

141.    Defendants have been unjustly enriched through the receipt of goods and inventory rightfully belonging to Plaintiffs and their refusal to turn over such goods and inventory to Plaintiffs.

142.    As a proximate and natural consequence of Defendants' unjust enrichment, Plaintiffs have sustained damages in an amount to be proven at trial, together with attorneys' fees.

## COUNT VII
## Constructive Trust

143.    Plaintiffs repeat and reallege each and every allegation contained herein, with the same force and effect as though fully set forth at length herein.

144.    Defendants' were in a confidential or fiduciary relationship with Plaintiffs.

145.    Defendants have refused to turn over inventory and goods to Plaintiffs, who have the right, title and interest to same.

146.     As a result of such, Defendants were unjustly enriched and the Plaintiffs were damaged as a result.

147.     As a result, a constructive trust should be imposed against the goods and inventory of Plaintiffs wrongfully converted by Defendants including any monies received by Defendants from their sale and distribution.

**COUNT VIII**
**Breach of Duty of Loyalty**

148.     Plaintiffs repeat and reallege each and every allegation contained herein, with the same force and effect as though fully set forth at length herein.

149.     Defendants owed a duty of loyalty to Plaintiffs as Shareholders, Directors, Officers and/ or Employees.

150.     Defendants breached their duty of loyalty to Plaintiffs by engaging in self-dealing, usurping corporate opportunities belonging to Plaintiffs and through the misappropriation of confidential information as set forth herein.

151.     Plaintiffs were damaged by Defendants' breach of their duty of loyalty and the usurpation of corporate opportunities belonging to Plaintiffs.

152.     By reason of the foregoing, Plaintiffs are entitled to a disgorgement of all salary or compensation paid to Defendants by the Company during the period of their disloyalty as described herein.

**COUNT IX**
**Violation BCL Section 720**

153.     Plaintiffs repeat and reallege each and every allegation contained herein, with the same force and effect as though fully set forth at length herein.

154.     Defendants were officers and/or employee of one or more Plaintiffs.

21

155.    Defendants neglected, failed to perform and violated their duties to Plaintiffs as described herein and by acquiring for themselves monies and opportunities that rightfully belong to Plaintiffs that would have inured to the benefit of Plaintiffs, stealing confidential information of Plaintiffs and diverting and wasting corporate assets and opportunities.

156.    Defendants have violated Section 720 of the Business Corporation Law of New York ("BCL").

157.    Defendants must account for their misconduct as provided for under Section 720 of the BCL.

## COUNT X
### (Defamation and Trade Libel)

158.    Plaintiffs repeat and reallege each of the allegations contained herein with the same force and effect as though fully set forth at length herein.

159.    Defendants or their agents made the defamatory statements or communications set forth herein.

160.    Such defamatory statements and communications were false.

161.    Such defamatory statements and communications were of and concerning Plaintiffs.

162.    Such defamatory statements and communications were made with scienter, were reckless and/or made with malice.

163.    Such defamatory statements injured Plaintiffs in their business.

164.    Such defamatory statements exposed Plaintiffs to shame, ridicule and disparagement and denigrated the quality of Plaintiffs' services and products.

165.    As a proximate and natural consequence of the Defendant's actions, Plaintiffs have sustained damages in an amount to be determined at trial but not less than $5,000,000.00.

166.    Moreover, the Defendant's actions as described herein were wanton and deliberate, warranting an award of punitive damages, in an amount to be determined at trial but not less than $1,000,000.00.

## COUNT XI
### (Tortious Interference with Contract, Existing and Prospective Business Relationships)

167.    Plaintiffs repeat and reallege each of the allegations contained herein with the same force and effect as though fully set forth at length herein.

168.    Plaintiffs, but for Defendants' intentional and wrongful acts, would have entered into or extended contractual and/or business relations with those customers, vendors and suppliers described herein.

169.    Plaintiffs had firm contracts with customers, vendors and suppliers as described herein and Defendants' wrongful actions were directed at such customers, vendors and suppliers to induce them to cancel the subject contracts.

170.    Defendants' tortious interference with Plaintiffs' existing customers and contracts and/or prospective business relations was accomplished by wrongful, malicious, dishonest and unfair means on the Defendants' part as described herein.

171.    Plaintiffs have been damaged by Defendants' tortious and wrongful behavior.

172.    By reason of the foregoing, the Defendant is indebted to Plaintiffs in an amount to be determined at trial but not less than $5,000,000.00.

173.    Moreover, the Defendants' actions as described herein were wanton and deliberate, warranting an award of punitive damages, in an amount to be determined at trial but not less than $1,000,000.00.

## COUNT XII
## Violation of Section 349 of the General Business Law

174.    Plaintiffs repeat and reallege each and every allegation contained herein, with the same force and effect as though fully set forth at length herein.

175.    Defendants have engaged in unlawful business acts or practices by committing acts including computer fraud, trespass, conversion, interference with business relations and other illegal acts and practices as alleged above, all in an effort to gain unfair competitive advantage over Plaintiffs.

176.    These unlawful business acts or practices were committed pursuant to business activity.

177.    The conduct, as alleged above, constitutes violations of numerous state and federal statutes and codes, including, but not limited to, violation of the Federal Computer Fraud and Abuse Act, grand larceny, criminal possession of stolen property, unauthorized  access to computers, wire fraud, and related activity in connection with an access device and falsifying business records.

178.    Defendants' conduct also constitutes trespass to chattels, conversion and unjust enrichment.

179.    Defendants have improperly and unlawfully taken commercial advantage of Plaintiffs' confidential and proprietary information including, pricing, customer lists acquired through wrongful means, as well as the good will ABH has developed with their long-standing customers.

180.    In light of Defendants' conduct it would be inequitable to allow Defendants to retain the benefit of the funds obtained though the unauthorized and unlawful use of Plaintiffs' property.

24

181.    Defendants' unfair business practices have unjustly minimized ABH's competitive advantage and have caused and are causing ABH to suffer damages.

182.    Defendants should be compelled to disgorge and/or restore any and all revenues, earnings, profits, compensation and benefits they may have obtained in violation of New York General Business Law Section 349, including but not limited to returning the value of the stolen property itself and any revenue earned from it and should be enjoined from further unlawful, unfair and deceptive business practices.

## COUNT XIII
### Conversion

183.    Plaintiffs repeat and reallege each and every allegation contained herein, with the same force and effect as though fully set forth at length herein.

184.    Defendants Imperio, Milano and Cartwright, jointly and severally, acted to remove confidential and proprietary information from Plaintiffs without authority so that they could benefit from such confidential information to the detriment of Plaintiffs.

185.    At no time did Imperio, Milano or Cartwright have permission or consent to remove said items and information for their benefit.

186.    By reason of the foregoin, ABH has been damaged in an amount to be determined at trial but expected to exceed the sum of $5,000,000.00

## COUNT XIV
### Breach of Contract

187.    Plaintiffs repeat and reallege each and every allegation contained herein, with the same force and effect as though fully set forth at length herein.

188.    Defendants Imperio and Milano executed the Restrictive Covenants in favor of Plaintiffs as set forth herein and agreed, among other things, not to compete against ABH in connection with its business or to solicit customers and employees.

189.    Defendants Imperio and Milano breached the Restrictive Covenant agreements by illegally competing with ABH and soliciting its customers and employees.

190.    As a natural consequence Plaintiffs have been damaged in an amount to be determined at trial but in no event less than $5,000,000.00.

191.    Plaintiffs repeat and reallege each and every allegation contained herein, with the same force and effect as though fully set forth at length herein.

192.    Defendants have failed and refused to deliver the goods and inventory of Plaintiffs stored at the Future Pack business location without justification.

193.    Plaintiffs' right to the goods and inventory is superior to Defendants' rights since Defendants have no right whatsoever to such goods and inventory.

194.    Plaintiffs are entitled to an order of replevin regarding the goods and inventory wrongfully withheld by Defendants.

## COUNT XV
### Violation of the Federal Computer Fraud and Abuse Act

195.    Plaintiffs repeat and reallege each and every allegation contained herein, with the same force and effect as though fully set forth at length herein.

196.    Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. §, by intentionally accessing a computer used for interstate commerce or communication, without authorization or by exceeding authorized access to such a computer, and by obtaining information from such a protected computer.

26

197.    Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. §
1030(a)(4) by knowingly, and with intent to defraud ABH, accessing a protected computer,
without authorization or by exceeding authorized access to such a computer, and by means of
such conduct furthered the intended fraud and obtained one or more things of value, including
but not limited to Plaintiffs' confidential information, confidential and proprietary customer list,
confidential and proprietary pricing information  and confidential employee salary information.

198.    Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C.
§1030(a)(5)(A)(i) by knowingly causing the transmission of a program, information, code, or
command and as a result intentionally causing damage without authorization to a protected
computer owned by Plaintiffs.

199.    Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C.
§1030(a)(5)(A)(ii) and (iii) by intentionally accessing a protected computer without
authorization, causing damage to Plaintiff, recklessly or without due regard for their actions.

200.    The computer system or systems that Defendants accessed as described above
constitute a "protected computer" within the meaning of 18 U.S.C. §1030(e)(2).

201.    Plaintiffs have suffered damage and loss by reason of these violations, including,
without limitation, harm to Plaintiffs' data, programs, and computer systems and other losses and
damage in an amount to be proved at trial, but, in any event, in an amount well over $5,000.00.

202.    Defendants' unlawful access to and theft from Plaintiffs computers also have
caused irreparable injury.

203.    Plaintiffs' remedy at law is not adequate to compensate it for these inflicted and
threatened injuries, entitling Plaintiffs to injunctive relief as provided by 18 U.S.C. §1030(g).

**COUNT XVI**
**Injunctive Relief**

204.     Plaintiffs repeat and reallege each and every allegation contained herein, with the same force and effect as though fully set forth at length herein.

205.    Plaintiffs have been and will continue to be irreparably harmed unless Defendants are enjoined and prohibited from utilizing the ABH Marks.

206.    Plaintiffs have been and will continue to be irreparably harmed unless Defendants Imperio and Milano are enjoined from competing against ABH and soliciting their customers and employees in violation of their Restrictive Covenant agreements.

207.    Defendants have and will continue to cause damages to Plaintiff's goodwill and reputation unless injunctive relief is not granted.

208.    Defendants' refusal to cease and desist the use of the ABH Marks and Defendant Imperio's and Milano's violation of their Restrictive Covenants has exposed Plaintiffs to irreparable and unquantifiable harm and damage as a matter of law.

209.    There is no adequate remedy at law.

210.    By reason of the foregoing, Plaintiffs are entitled to a temporary and permanent injunction prohibiting Defendants from utilizing any of the ABH Marks, from competing against Plaintiffs and soliciting their customers and employees in violation of the Restrictive Covenants and compelling Defendants to release Plaintiffs goods and inventory.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

a.  A preliminary and permanent injunction be issued enjoining the Defendants and each of their agents, servants, employees and attorneys and those persons in act of concert or participating with them:

    i.     From using any of the ABH Marks similar thereto in connection with the sale of goods or the rendering of authorized services;

    ii.     From using any logo, tradename or trademark which may be calculated to falsely represent or has the effect to falsely representing that the services or products of the Defendants are sponsored or authorized by or in any way associated with Plaintiffs;

    iii.     From infringing the ABH Marks;

    iv.     From falsely representing themselves as being connected with the Plaintiffs or being sponsored by or associated with Plaintiffs or engaging in any act or allowing acts which are likely to cause the trade, retailing and/or members of the purchasing public to falsely believe that the Defendants are associated with Plaintiffs;

    v.     From affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation including words or other symbols tending to falsely describe or represent such goods as being those of Plaintiff and from offering such goods in commerce; and

    vi.     Competing against Plaintiffs and soliciting customers and employees in violation of the Restrictive Covenants in place.

    vii.     Ordering Replevin and the Seizure of the ABH Goods wrongfully converted by one or more of the Defendants.

b.  Defendants each be required to pay Plaintiffs' actual damages, the Defendants' profits or lost profits and other damages suffered as a result of their intentional

and willful misconduct in an amount to be determined at trial, including punitive damages.

    c.  Plaintiffs be awarded interest and the costs of this action including all of its attorneys' fees.

    d.  Plaintiffs be granted such other and further relief at this Court deems just and proper.

Dated: Islandia, New York
       October 4, 2019

LEWIS JOHS AVALLONE AVILES, LLP

By: _____
       James F. Murphy, Esq.
One CA Plaza, Suite 225
Islandia, New York 11749
T: (631) 755-0101
F: (631) 755-0117
E-mail: jfmurphy@lewisjohs.com

*Attorneys for Plaintiffs ABH Nature's Products and ABH Pharma, Inc.*

30