UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ABH NATURE'S PRODUCTS, INC. and ABH PHARMA, INC.,

                      Plaintiffs,

-against-

SUPPLEMENT MANUFACTURING PARTNER, INC. d/b/a SMP NUTRA, FUTURE PACK FULFILLMENT, INC., JOSEPH IMPERIO, alias FRANK CANTONE, STEVEN MILANO, WILLIAM CARTWRIGHT, and JOHN DOES Nos. 1-10,

                      Defendants.

**MEMORANDUM AND ORDER**
19-CV-5637 (LDH) (JRC)

---

LaSHANN DeARCY HALL, United States District Judge:

      ABH Nature's Products, Inc. ("ABH Nature's") and ABH Pharma, Inc. LLC ("ABH Pharma") (collectively, "Plaintiffs" or "Counterclaim-Defendants") bring the instant action against Supplement Manufacturing Partner, Inc., d/b/a SMP Nutra ("SMP"), Future Pack Fulfillment, Inc. ("Future Pack"), Joseph Imperio ("Imperio"), alias Frank Cantone, Steven Milano ("Milano"), William Cartwright ("Cartwright") and John Does Nos. 1–10 (collectively, "Defendants" or "Counterclaim Plaintiffs"), asserting claims for False Designation of Origin, False Advertising, and Unfair Competition in violation of 15 U.S.C. § 1125(a), and claims under New York law for trademark infringement, common law unfair competition, breach of fiduciary duty and implied covenant of good faith and fair dealing, unjust enrichment, breach of duty of loyalty, tortious interference with contract, existing and prospective business relationships, and breach of contract.  Counterclaim Plaintiffs answered the complaint, and asserted counterclaims

- 1 -

under New York law for breach of contract, fraud, and breach of fiduciary duty.[1]  Counterclaim Defendants move pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment on Counterclaim Plaintiffs' counterclaims in Counterclaim Defendants' favor.

## UNDISPUTED FACTS[2]

Jahirul Islam ("Islam") formed ABH Nature's in 1995.  (Defs.' Opp'n to Pls.' Rule 56.1 Stmt. ("Counter Pls.' Resp. 56.1"), ¶ 1, ECF No. 66-32.)  ABH Nature's manufactures nutraceutical and health supplements.  (*Id.*)  In or around March 2016, Imperio and Islam agreed to form a nutraceutical sales and marketing company called ABH Pharma, whereby each owned fifty percent of the company.  (*Id.* ¶¶ 2–3.)  Sometime in the summer of 2018, however, Islam and Imperio entered into a Share Purchase Agreement, transferring Imperio's whole stake in ABH Pharma to Islam.  (*Id.* ¶¶ 9–10.)

While the Share Purchase Agreement's existence is not in dispute, the parties take divergent views of the circumstances surrounding its formation.  According to Counterclaim Plaintiffs, the same day that Imperio and Islam signed the Share Purchase Agreement, Imperio also signed a second agreement that purported to give Imperio's transferred ABH Pharma shares back to him on a later date.  (*Id.* ¶ 37.)  Counterclaim Plaintiffs assert that Imperio was told to transfer his shares in the Share Purchase Agreement because ABH Nature's needed to obtain a bank loan and that ABH Nature's and ABH Pharma's chief operating officer, Steven Gaskowitz, claimed that the bank would reject the loan if it knew about the second agreement.  (*Id.* ¶¶ 37, 39.)  Accordingly, Counterclaim Plaintiffs argue that Gaskowitz held onto the second agreement

---

[1] On July 6, 2022, Defendants informed the Court that the parties stipulated and agreed that Defendants' third, fourth, fifth, seventh, eighth, and ninth counterclaims are dismissed with prejudice.  (ECF No. 58.)  Therefore, this Memorandum and Order addresses the remaining first, second and sixth counterclaims.

[2] The following facts are taken from the parties' statements of material fact pursuant to Local Rule 56.1 and annexed exhibits.  Unless otherwise noted, the facts are undisputed.

for safekeeping. (*Id.*) And, when Imperio visited ABH Pharma's offices on September 4, 2019, to request that Islam provide him with a copy of the second agreement, Counterclaim Plaintiffs assert that Islam refused to produce the document, claiming not have it. (*Id.* ¶¶ 41, 45.)

Counterclaim Plaintiffs further claim that even after Imperio and Islam signed a Share Purchase Agreement on July 19, 2018, Imperio continued to work on behalf of ABH Parma. (*Id.* ¶ 36.) They point out, for example, that Imperio flew to Colorado the day after signing the Share Purchase Agreement for an investment pitch on behalf of ABH Pharma on the business reality television series *Shark Tank*. (*Id.*)

On the other hand, Counterclaim Defendants posit that the Share Purchase Agreement was signed after August 2018. (*Id.* ¶ 10.) They also dispute the existence of a second agreement given that it has not been produced in discovery. Instead, Counterclaim Defendants assert that there was just one agreement and that the Share Purchase Agreement's terms is the only record of Imperio and Islam's intentions with respect to the ABH Pharma shares. (Pls.' Reply. 56.1 Stmnt. ("Counter Defs.' Reply 56.1") ¶¶ 37, 39.) Counterclaim Defendants also note that Gaskowitz could not have held onto the Second Agreement because he was not employed by ABH until two months after the second agreement's alleged execution. (*Id.*)

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The movant bear the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 23

(1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Where the non-movant bears the burden of proof at trial, the movant's initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movant's claim. *Celotex Corp.*, 477 U.S. at 325. Once the movant meets its initial burden, the non-movant may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Anderson*, 477 U.S. at 250; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). The Court is to believe the evidence of the non-movant and draw all justifiable inferences in his favor, *Anderson*, 477 U.S. at 255, but the non-movant must still do more than merely assert conclusions that are unsupported by arguments or facts. *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

## DISCUSSION

**I.     BREACH OF CONTRACT (COUNTERCLAIM ONE)**

In their answer to the complaint, Counterclaim Plaintiffs raise a breach of contract counterclaim against Counterclaim Defendants. (Defs.' Answer and Counterclaims ("Counter Pls.' Answer") ¶¶ 78–88, ECF No. 15.) Counterclaim Plainitffs assert that Imperio and Islam formed two separate agreements, that Counterclaim Defendants breached those agreements because Imperio is entitled to, but never received, a fifty-percent distribution of Pharma's profits, and that Islam took "illicit" measures to conceal and deny the second agreement's existence. (*Id.*) Counterclaim Defendants move for summary judgment on that claim, arguing that there is no dispute that the only agreement Imperio and Islam signed is the Share Purchase Agreement that was produced in discovery. (Pls.' Mem. of L. in Support of Mot. for Summ. J. ("Counter Defs.' Mem.") at 1, ECF No. 66-17 .) The Court agrees.

A claim for breach of contract under New York law requires "the existence of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and resulting damages." *Harris v. Seward Park Hous. Corp.*, 79 A.D.3d 425, 426 (N.Y. App. Div. 2010). Typically, "[a]n original writing . . . is required in order to prove its content unless these rules or a federal statute provides otherwise." *Elliott v. Cartagena*, 84 F.4th 481, 489 (2d Cir. 2023;*see also* Fed. R. Evid. Rule 1002 ("An original writing, recording, or photograph is required in order to prove its content."). There is no dispute that there was an initial agreement. Counterclaim Plaintiffs insist, however, that the parties formed a second Share Purchase Agreement that Islam breached. (Defs.' Mem. in Opp'n to Mot. for Summ. J. ("Counter Pls.' Mem.") at 5–8, ECF No. 66-31.) That agreement purported to give Imperio's transferred ABH Pharma shares back to him on a later date. (*Id.* at 1.) That agreement has not been produced.

However, an original is "not required and other evidence of the content of a writing . . . is admissible if: (a) all the originals are lost or destroyed, and not by the proponent acting in bad faith; (b) an original cannot be obtained by any available judicial process; [or] (c) the party against whom the original would be offered had control of the original; was at that time put on notice, by pleadings or otherwise, that the original would be a subject of proof at the trial or hearing; and fails to produce it at the trial or hearing. " Fed. R. Evid. Rule 1004. "[S]econdary evidence of the contents of an unproduced original may be admitted upon threshold factual findings by the trial court that the proponent of the substitute has sufficiently explained the unavailability of the primary evidence . . . and has not procured its loss or destruction in bad faith." *Schozer v. William Penn Life Ins. Co. of New York*, 644 N.E. 2d 1353, 1355 (1994) (internal citations and quotations omitted.) Such secondary evidence requires evidence of both the existence of the document and its terms. *Glew v. Cigna Grp. Ins.*, 590 F. Supp. 2d 395, 413

(E.D.N.Y. 2008) ("secondary evidence requires evidence of the policy terms, not just of the existence of the policy").  The "more important the document to the resolution of the ultimate issue in the case, 'the stricter becomes the requirement of the evidentiary foundation [establishing loss] for the admission of secondary evidence.'" *Schozer*, 644 N.E. 2d at 1355. Moreover, "the court should give careful consideration to the possible motivation for the nonproduction of the original in determining whether the foundational proof of loss was sufficient." *Id.*

Here, the second agreement is critical to Counterclaim Plaintiffs' claims, and therefore the court will look at it with a strict lens.  Against that backdrop, Counterclaim Plaintiffs' evidence of a second agreement is woefully deficient.  Much of the evidence Counterclaim Plaintiffs offer as to the existence of the second agreement and its terms comes directly from Imperio's own self-serving testimony.  According to Imperio, he signed the second agreement on July 19, 2018, but ABH Nature's then-CFO Steven Gaskowitz held onto the second agreement thereafter.  (Counter Pls.' Reply 56.1 ¶ 39.)  Imperio testified that he does not have a copy of the second agreement because Islam rebuffed his requests to see the document after it was signed.  (*Id.* ¶ 41).  Imperio's unsubstantiated claims cannot create a genuine dispute of fact regarding the existence of a second agreement between the parties.  *See Deebs v. Alston Transp., Inc.*, 346 F. App'x 654, 656 (2d Cir. 2009) (stating that self-serving deposition testimony, by itself, was "insufficient to defeat summary judgment"); *see also JF v. Carmel Cent. Sch. Dist.*, 168 F. Supp. 3d 609, 616 (S.D.N.Y. 2016) ("[A] nonmoving party's self-serving statement, without direct or circumstantial evidence to support the charge, is insufficient to defeat a motion for summary judgment." (citation and alterations omitted)).

Beyond Imperio's testimony, the other record evidence Counterclaim Plaintiffs point to is insufficient to establish that there was a second agreement.  Counterclaim Plaintiffs claim that

- 6 -

former Pharma Chief Operating Officer Rocco DiPietro was in the room along with Steven Gaskowitz when the purported second agreement was signed. (Counter Defs.' 56.1 Opp'n ¶ 9, ECF No. 66-18.) But, according to DiPietro himself, he was not in the room when either agreement was signed. (DiPietro Decl., Monroe Decl. Ex. BB, ¶ 24, ECF No. 66-37.); *see Nicosia v. Muller*, 229 A.D.2d 964, 965 (N.Y. App. Div. 1996) (noting that "a party may elicit parol evidence to prove the existence and terms of a written agreement [through] . . . the testimony of others who have *first-hand* knowledge of the existence of the writing and its terms"). And, as Counterclaim Defendants point out, Steven Gaskowitz could not have taken the second agreement because he did not start at the ABH companies until August of 2018, a month after Defendants argue the second agreement was formed. (Gaskowitz Dep. Tr., Monroe Decl. Ex. AA, at 9:14–16, ECF No. 66-36.)

On balance, that testimony alone cannot create a genuine dispute of fact as to this issue. Therefore, Counterclaim Defendants are entitled to judgment as a matter of law on the breach of contract counterclaim.

## II.    FRAUD (COUNTERCLAIM TWO)

Counterclaim Plaintiffs also raise a counterclaim for fraud, arguing that Islam induced Imperio to enter into the Share Purchase Agreement under the guise that his shares in Pharma would be returned to him through a second agreement when Islam had no intention of doing so. Instead, Counterclaim Plainitffs contend that Islam took possession of the second agreement for "bank purposes" and "wrongfully" denied its existence. (Counter Pls.' Answer ¶¶ 89–97.) Counterclaim Plaintiffs further argue that Imperio relied on Islam's representations that his shares would be returned to him through a second agreement, and acted on that reliance by signing the second agreement. (*Id.*) Counterclaim Plaintiffs also argue that in furtherance of his fraud, Islam induced Imperio and Milano to sign purported non-compete agreements to prevent

them from competing against him once they learned of the fraud and Imperio suffered 5,000,000 in damages.  (*Id.* ¶ 95–97.)

Counterclaim Defendants move for judgment as a matter of law on the fraud counterclaim given that Imperio failed to produce the alleged second written agreement. Moreover, Counterclaim Defendants argue that Imperio was aware of the company's financial dealings as President of ABH Pharma and that he acknowledges that he transferred his shares, eliminating a claim that there was a false representation.  (Counter Defs.' Mem. at 9.)

Plaintiffs asserting a claim of fraudulent misrepresentation must show that: "(1) the defendant made a material[ly] false representation, (2) the defendant intended to defraud the plaintiffs thereby, (3) the plaintiffs reasonably relied upon the representation, and (4) the plaintiffs suffered damage as a result of their reliance." *J.A.0. Acquisition Corp. v. Stavitsky*, 18 A.D. 3d 389, 390 (2005).  Material statements are statements that are sufficiently important or relevant such that they influence or induce a plaintiff's decision.  *See Aguirre v. Best Care Agency, Inc.*, 961 F. Supp. 2d 427, 448 (E.D.N.Y. 2013) ("Materiality refers to statements that are sufficiently important or relevant to influence the plaintiff's decision.") (collecting cases).

As with their breach of contract counterclaim, Counterclaim Plaintiffs' fraud counterclaim rests on the theory that Islam told Imperio that he would return Imperio's shares to him.  While Defendants may prove this claim without producing the second agreement that allegedly reduced these intentions to writing, *see* Fed. R. Evid. Rule 1004, its absence is telling. Counterclaim Plaintiffs do not dispute the terms of the Share Purchase Agreement.  Nor do they suggest any of those terms contain a materially false statement.  Instead, Counterclaim Plaintiffs argue that Islam misled Imperio during their negotiations and that those misleading statements are found in the absent second agreement.  (Counter Pls. Mem. at 10–11.)  In other words,

Counterclaim Plaintiffs rely on virtually the same evidence for their fraud counterclaim as they did for their breach of contract counterclaim.  For the same reasons the breach of contract counterclaim evidence does not support a genuine issue of fact, the fraud counterclaim fails as well.

Accordingly, Counterclaim Defendants are entitled to judgment as a matter of law on Counterclaim Plaintiffs' counterclaim for fraud.

### III.     BREACH OF FIDUCIARY DUTY (COUNTERCLAIM SIX)

Finally, Counterclaim Defendants argue that Counterclaim Plaintiffs have failed to establish a breach of an existing fiduciary duty because they have not established the "circumstances of Islam's alleged misconduct and how such misconduct induced Imperio" to sign the Share Purchase Agreement, the alleged second agreement, or any other agreements constitutes a breach.  (Counter Defs.' Mem. at 10.)  Counterclaim Defendants argue further that to the extent Counterclaim Plaintiffs' counterclaim relies upon the existence of the alleged second agreement, its absence is fatal to Defendants' counterclaim.  (*Id.*)  The Court agrees with Counterclaim Defendants.

To recover damages for a claim of a breach of fiduciary duty, a plaintiff must prove:  "(1) the existence of a fiduciary relationship; (2) misconduct by; and (3) damages directly caused by defendant's misconduct."  *Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 241 (2d Cir. 2020).  A breach of a fiduciary duty can be found where self-dealing on the party of a party to the fiduciary relationship resulted in the loss of considerable amounts of money.  *See Reznor v. J. Artist Mgmt., Inc.*, 365 F. Supp. 2d 565, 574 (S.D.N.Y. 2005) (finding that a jury could find a

breach of fiduciary in the context of self-dealing whereby a party lost considerable amounts of money).

Here, assuming a fiduciary relationship existed between Islam and Imperio, the record evidence does not support a genuine dispute that Islam engaged in any misconduct. Counterclaim Plaintiffs argue that Islam breached his duty to Imperio by engaging in a scheme to defraud Imperio. (Counter Pls.' Mem. at 12–13.) As previously stated, that allegation is not supported by the record. To repeat, Counterclaim Plaintiffs' fraud claim, and thus their breach of fiduciary duty claim, rests on the premise that Islam told Imperio that if he signed over his shares of ABH Pharma, he would get them back. The evidence of this misrepresentation is sparse and comes down to Imperio's own self-serving testimony. As with the other counterclaims, Counterclaim Defendants are entitled to judgment as a matter of law on Counterclaim Plaintiffs' counterclaim for breach of fiduciary duty.

## CONCLUSION

For the foregoing reasons, Counterclaim Defendants' motion for summary judgment is GRANTED.

SO ORDERED.

Dated: Brooklyn, New York  /s/ LDH
      March 29, 2024  L<small>A</small>SHANN D<small>E</small>ARCY HALL
                                                    United States District Judge